IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Wade Valdaise Rouse, | ) Civil Action No: 8:13-cv-1044-TMC-JDA |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Stanley Patrick, | ) |
| Defendant. | ) |

Plaintiff Wade Rouse ("Plaintiff") brought this suit alleging constitutional violations pursuant to 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in § 1983 cases are referred to a United States Magistrate Judge for consideration. In the case at bar, Plaintiff named Stanley Patrick and Chief Magistrate Judge Brenda B. Carpenter as Defendants. Judge Carpenter was dismissed from this action on May 23, 2013. [Doc. 16.] On July 29, 2013, Defendant Stanley Patrick ("Defendant") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 24.] On July 30, 2013, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 25.] Plaintiff filed a timely response on August 20, 2013. [Doc. 28.] The motion is now ripe for review.

1

## BACKGROUND

Plaintiff is currently detained at the Edgefield County Detention Center awaiting trial on a charge unrelated to this action. [Doc. 1 at 2.] With respect to the charge related to this action, Plaintiff was arrested on November 8, 2012, for a charge of criminal domestic violence. [*Id.* at 4.] On that date, Plaintiff and his girlfriend Latisha Surry ("Surry") had a "disagreement." [*Id.* at 6.] Plaintiff reports that Surry chased him from their vehicle and attempted to use force on him "as a means to stop [his] escape from an altercation." [*Id.*] A "white male" saw the altercation from his vehicle and slowed down, and Surry yelled at him to call the police. [*Id.*] Plaintiff alleges Surry scratched him and had torn his clothes "almost completely off." [*Id.*] He claims Surry attempted to run him over with her car, and he ran to his ex-girlfriend's home to try to escape Surry. [*Id.* at 7.] Surry then arrived at his ex-girlfriend's house, and the altercation continued until the police, including Defendant, arrived. [*Id.* at 8.] Plaintiff gave a statement to police with his version of events, and Surry reported that Plaintiff was abusing her. [*Id.*] Plaintiff alleges the police did not take his scratches, injuries or torn clothes into account and that Defendant placed him in the police car without reading Plaintiff his rights. [*Id.* at 6, 8.] Defendant arrested Plaintiff for criminal domestic violence and took Plaintiff to the Edgefield County Detention Center. [*Id.* at 9.] Plaintiff was served with a copy of the arrest warrant that same day. [Doc. 1-3 at 2.] Plaintiff declined to plead guilty in exchange for time served and requested a jury trial. [Doc. 1 at 9.] The charges were dropped on January 24, 2013, when Surry declined to prosecute. [Doc. 1-3 at 1.]

Plaintiff claims that he was a victim of false arrest because there was no evidence to support the charge. [Doc. 1 at 4.] He asserts he was "publicly humiliated and embarrassed" by Defendant when Defendant reported the arrest, including Plaintiff's photo, age, name, and place of residence, to the Edgefield Citizens News. [*Id.*] Plaintiff alleges his incarceration caused him pain and suffering, and he requests compensatory damages. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

3

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

> Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

**False Arrest**

Section 1983 actions premised on alleged unlawful seizure, malicious prosecution, false arrest, and/or false imprisonment are analyzed as actions claiming unreasonable seizures in violation of the Fourth Amendment. *See, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002) (analyzing the plaintiff's allegations of false arrest as a claim of unreasonable seizure under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"); *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ("[T]here is no such thing as a '§ 1983 malicious prosecution' claim. What we termed a 'malicious prosecution' claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.").

As discussed, to assert a claim under § 1983, the plaintiff must allege "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). Defendant does not dispute that the state action requirement of § 1983 is present here. The Complaint alleges false arrest, which as noted is analyzed as an unreasonable seizure. However, the Complaint makes clear that Plaintiff was arrested pursuant to a warrant. Under § 1983, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998); *see also*, *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181-82 (4th Cir. 1996). Here, Plaintiff attached his arrest

warrant to his Complaint. [Doc. 1-3 at 2.] He has made no allegation that the arrest warrant was deficient, not signed by a magistrate judge, or fraudulently obtained, but simply maintains that he was innocent of the charge.

In his response, Plaintiff argues that he was not served with the arrest warrant until after he was detained. [Doc. 28 at 4.] However, Fourth Circuit law is clear that an arresting officer need not have possession of the warrant at the time of the arrest. *United States v. Johnson*, 49 Fed. Appx. 871, 873 (4th Cir. 2002)(per curiam). Plaintiff admits he was served with an arrest warrant the same day he was arrested and after he was taken into custody. [Doc. 28 at 4.] Therefore, even taking Plaintiff's allegations in his response as true, the service of a valid warrant after the arrest does not change the Court's analysis.

Though Plaintiff has not specifically alleged that Defendant lacked probable cause to arrest him, to the extent that the Court construes Plaintiff's claim as one for malicious prosecution---an unreasonable seizure due to lack of probable cause---such claim must also fail.[1] Seizures are "reasonable" only if based on probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979). The test to determine whether probable cause existed for a seizure is an objective one, based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *see also Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006)(citing *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.") (abrogated on

---

1 The Court notes there is some question as to whether a claim for malicious prosecution is cognizable under 42 U.S.C. § 1983. *See Snier v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009); *Vaughn v. Whitfield*, Civ. Action No. 12-2405-RMG, 2013 WL 5144751 at *3 (D.S.C. Sept. 12, 2013).

other grounds by *Pearson v. Callahan*, 555 U.S. 223, 235 (2009)). Specifically, the totality of the circumstances includes "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 96 (1964), and such facts and circumstances constitute probable cause if they are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *id.* Here, a magistrate judge found sufficient probable cause to issue an arrest warrant. [Doc. 1-3.] Moreover, Plaintiff admits that he was engaged in an altercation with his then girlfriend, that a neutral third party called the police about the altercation, that he had injuries indicating a fight had taken place, and that Surry stated to police that Plaintiff was abusing her. The Court concludes that based upon Plaintiff's own allegations, the police had probable cause to arrest him.

Additionally, [t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Moreover, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Therefore, because Defendant obtained an arrest warrant, Plaintiff has not challenged its validity, and Plaintiff has not raised a sustainable claim that the police lacked probable cause, Plaintiff's false arrest claim should be dismissed.

**Miranda Violation**

In his Complaint, Plaintiff alleges that Defendant put him in the police car "without even reading [him his] rights." [Doc. 1 at 8.] Miranda warnings are only required before

a custodial interrogation. *See, e.g., Thompson v. Keohane*, 516 U.S. 99, 101 (1995). Plaintiff here did not allege he was interrogated, thus *Miranda* does not apply. However, in his response, Plaintiff claims he "was questioned and searched before being booked into jail and [he] was never and still have not been read [his] rights to this day." [Doc. 38 at 3.] Even taking these allegations into consideration, Plaintiff fails to state a claim under § 1983. The Supreme Court has held that an individual's constitutional rights under the Fifth Amendment are violated "only if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003)(plurality opinion); *Burrell v. Virginia*, 395 F.3d 508, 513-14 (4th Cir. 2005)(discussing *Chavez*); *Reaves v. Richardson*, 4:09-CV-820-TLW-SVH, 2011 WL 2119319 at *3 (D.S.C. Mar. 1, 2011)*, report and recommendation adopted,* 4:09-CV-820-TLW-SVH, 2011 WL 2112100 (D.S.C. May 27, 2011). The purpose of *Miranda* is to provide a protection against self-incrimination. *Id.* "[R]ules designed to safeguard a constitutional right . . . do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Chavez,* 538 U.S. at 772. Failure to read *Miranda* warnings, without allegation of compelled testimony, is insufficient to rise to the level of a constitutional violation actionable under § 1983. The criminal domestic violence charge against Plaintiff was dropped prior to prosecution, and he has made no allegation that any statements made were used against him. Therefore, dismissal of this claim is appropriate.

**Defamation**

Finally, Plaintiff alleges that Defendant "publicly humiliated and embarrassed him" when Defendant gave information about Plaintiff's arrest to the Edgefield Citizen News.

11

Simple defamation is not actionable under § 1983. *Paul v. Davis*, 424 U.S. 693, 711 (1976) ("[w]e hold that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."); *Carter v. Dozier*, 2:10-CV-2812-RMG-BHH, 2011 WL 2457547 at *2 (D.S.C. May 31, 2011) (recommending a grant of summary judgment on Plaintiff's claim for defamation under § 1983 and finding that "[c]ivil rights statutes . . . do not impose liability for violations of duties of care arising under a state's tort law."). To the extent Plaintiff attempts to allege a state law defamation claim in addition to his § 1983 claim, such state law claims could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[2] Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion to dismiss [Doc. 24] be GRANTED.

IT IS SO RECOMMENDED.

                                              s/Jacquelyn D. Austin
                                              United States Magistrate Judge

October 8, 2013
Greenville, South Carolina

---

2  A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied.  However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendant are both citizens of the State of South Carolina, which defeats the required complete diversity of parties.  *See* 28 U.S.C. § 1332.